Mark A. Kleiman (SBN 115919)
Law Office of Mark Allen Kleiman
2907 Stanford Ave. Venice, CA 90292
Telephone: (310) 306-8094
Facsimile: (310) 306-8491
Email: mkleiman@quitam.org

Ben Gharagozli (SBN 272302)
Law Offices of Ben Gharagozli
2907 Stanford Avenue
Marina del Rey, California 90292
Telephone: (661) 607-4665
Facsimile: (855) 628-5517
Email: ben.gharagozli@gmail.com

Attorneys for Plaintiff, RABAB ABDULHADI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RABAB ABDULHADI,<br><br>　　　　Plaintiff,<br>　　　　v.<br><br>BOARD OF TRUSTEES of the CALIFORNIA STATE UNIVERSITY; LESLIE WONG;  SUE V. ROSSER; and JENNIFER SUMMIT<br><br>　　　　Defendants | Case No.: 4:18-cv-04662-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF 33]**<br><br>**Date: March 12, 2019**<br>**Time: 2:00 p.m.**<br>**Location: Courtroom 1 (4th Floor)**<br>**Judge: Yvonne Gonzalez Rogers** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES………………………………………………………...i

MEMORANDUM OF POINTS AND AUTHORITIES…………………………………1

   I.      INTRODUCTION AND SUMMARY OF ARGUMENT……………………………1

   II.     ARGUMENT……………………………………………………………………2

        A.   As Decision-Making Authorities Who Also Committed Overt Acts,
           the Individual Defendants May be Sued in Their Official Capacities,
           Their Personal Capacities, or Both…………………………………………..2

        B.  Plaintiff Has Plead That She Engaged in Constitutionally Protected
           Speech, That Defendant Wong's Actions Would Have a Chilling
           Effect on Ordinary Persons, and That There Was a Nexus Between
           Plaintiff's Speech and Wong's Actions…………………………………...3

        C.   Plaintiff Has Adequately Stated a Section 1983 Claim
           Against President Wong………………………………………………………4

        D.  Plaintiff Seeks Leave to Amend Her Claims Against Sue V. Rosser,
           Ph.D.-  Provost and Vice President for Academic Affairs
           (August 2009-October 2016)…………………………………………………11

        E.  Plaintiff Seeks Leave to Amend Her Claims Against Jennifer
           Summit, Ph.D.-Interim Provost (October 2016 – March 2018) and
           Provost (March 2018 – Present)..………………………………………… 12

   III.    CONCLUSION……………………………………………………………….. 12

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

4

Ariz. Students' Ass'n v. Ariz. Bd. of Regents 824 F.3d 858 (9th Cir. 2016)..................... 3,4

5

Hafer v. Melo, 502 U.S. 21 (1991)...........................................................................2,3

6

7

Hartmann v. Cal. Department of Corr. & Rehab., 707 F.3d 1114 (9th Cir. 2013).................2

8

Kentucky v. Graham, 473 U.S. 159 (1985)...............................................................3

9

O'Brien v. Welty, 818 F.3d 920 (9th Cir. 2016)..........................................................3

10

Price v. Akaka, 928 F.2d 824 (9th Cir. 1991)............................................................3

11

12

Ulrich v. City and County of San Francisco 303 F.3d 968 (9th Cir. 2002).........................4

13

## **STATUTES**

14

42 U.S.C. § 1981..........................................................................................1

15

42 U.S.C. § 1983.....................................................................................1,2,4,9

16

17

42 U.S.C. § 2000e........................................................................................1

18

42 U.S.C. § 12112........................................................................................1

19

Cal. Labor Code § 970...................................................................................1

20

21

22

23

24

25

26

27

28

---

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff has brought a ten-count complaint against the California State University Board of Trustees and three San Francisco State University (SFSU) officials.  Although there are ten causes of action, the complaint boils down to allegations of (1) breach of contract; (2) discrimination based on race, religion, or national origin; (3) disability discrimination; and (4) a cause of action for deprivation of civil rights under color of law for retaliation against plaintiff for her exercise of her right to freedom speech and academic freedom.

Defendants have moved to dismiss the complaint on a variety of grounds, chief among them being a sovereign immunity argument as to causes of action 1 through 5, encompassing the breach of contract and associated Cal. Labor Code violation, the claim under 42 U.S.C. §1981, the claim against the Board of Trustees under 42 U.S.C. §1983, and the claim under the Americans with Disabilities Act (under 42 U.S.C. §12112, *et. seq.*).  Defendants also quarrel with Plaintiff's Title VII allegations and her claims against the individual defendants (a President and Provost and former Provost of SFSU) under 42 U.S.C. §1983.

Plaintiff acknowledges that the first and second causes of action, her claim for breach of contract and the associated violation of under Cal. Labor Code §970 should have been filed in state court and agrees to a voluntary dismissal of those claims without prejudice to their being refiled in state court.  As she will be refiling in state court she also requests voluntary dismissal without prejudice of causes of action six through nine, so those may be refiled in state court as well.   If the Court grants the aforementioned motion for voluntary dismissal, those portions of plaintiff's complaint alleging discrimination in violation of state laws will be dismissed without prejudice and refiled.  Further, she concomitantly requests dismissal of causes of action three, four, and five (42 U.S.C. §1981; under 42 U.S.C. §2000e [the "Title VII claims"] and under 42 U.S.C. §12112 [the "ADA" claim.].  Finally, plaintiff moves for voluntary dismissal as to CSU Board of Trustees as a defendant in the 42 U.S.C. §1983 cause of action.

The matter remaining in dispute is the §1983 claims as to the individual defendants. This brief will explain why, as a matter of law these claims survive and why they are adequately plead as to President Wong, the first named of the individual defendants.  As to former Provost Rosser and the current Provost Summit, Plaintiff seeks leave to amend to strengthen the personal capacity allegations.[1]

## II.    **ARGUMENT**

A.  **As Decision-Making Authorities Who Also Committed Overt Acts, the Individual Defendants May be Sued in Their Official Capacities, Their Personal Capacities, or Both**.

It is beyond dispute that a plaintiff seeking injunctive relief against the State may sue a state official in his or her official capacity.  <u>Hartmann v. Cal. Department of Corr. & Rehab.</u>, 707 F.3d 1114, 1127 (9th Cir. 2013).  "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation.  Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief."  <u>Id.</u> (citations omitted).  Although the <u>Hartmann</u> court dismissed three of the plaintiff's five causes of action, it did not dismiss defendant Cate, who plaintiff had sued in both his official capacity as Secretary of the California Department of Corrections and Rehabilitation and in his personal capacity.  <u>Id.</u> It is thus important to understand that the capacity in which an official committed allegedly unconstitutional conduct does not determine the capacity in which that official is sued.  *See* <u>Hafer v. Melo</u>, 502 U.S. 21, 26 (1991).  Official capacity, therefore "is best understood as a reference to the capacity in

---

[1] Plaintiff believes that her claim against President Wong has been adequately plead.  However, out of an abundance of caution, should the Court determine that Plaintiff has not adequately pled allegations in support of her 1983 claim against President Wong, Plaintiff respectfully requests leave to amend to provide additional allegations.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

2

1 | which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."

2 | Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

3 | In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the

4 | governmental entity of which the official is an agent was the moving force behind the violation.

5 | See Hafer, 502 U.S. at 25; Graham, 473 U.S. at 166.  As plaintiff shall demonstrate, this has

6 | been amply plead as to President Wong, and will be amply plead as to Provosts Rosser and

7 | Summit.

8 | Defendants cite no law holding that a state employee may not be sued in both her official

9 | and personal capacities so long as plaintiff makes it clear that only injunctive relief is sought

10 | against a defendant for acts undertaken in her or his official capacity, and only monetary

11 | damages are sought for acts undertaken in her or his personal capacity, so long as those acts

12 | were undertaken under color of state law,  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

13 | B. **Plaintiff Has Plead That She Engaged in Constitutionally Protected Speech,**

14 | **That Defendant Wong's Actions Would Have a Chilling Effect on Ordinary**

15 | **Persons, and That There Was a Nexus Between Plaintiff's Speech and Wong's**

16 | **Actions**.

17 | Otherwise lawful government action may nonetheless be unlawful if motivated by

18 | retaliation for having engaged in protected activity under the First Amendment."  O'Brien v.

19 | Welty, 818 F.3d 920, 932 (9th Cir. 2016).  Thus, even if repeated audits and the creation of a

20 | maze of bureaucratic requirements were lawful, it would be unlawful to impose them out of a

21 | retaliatory motive.  State officials may chill speech by threatening or causing pecuniary harm.

22 | Ariz. Students' Ass'n v. Ariz. Bd. of Regents 824 F.3d 858, 868 (9th Cir. 2016).  Whether a

23 | government benefit was contractually required or not, refusing to grant it on the basis of speech

24 | is forbidden.  Id., at 869. And "[I]mportantly, the deprivation of a valuable government benefit

25 | for the purpose of discouraging the exercise of First Amendment rights need not be particularly

26 | great in order to find that rights have been violated."  Id., at 870.  The Ariz. Students' Ass'n

27 | case goes on to note that removing a volunteer from an unpaid position, being fired from a

28 |

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

3

Case No. __4:18-cv-04662

1    prison job, the suspension of previously authorized environmental use permits,  or, in the <u>ASA</u>

2    case, ceasing to automatically collect student fees were all sufficient to trigger liability if it were

3    to be shown that the government's change in policy was undertaken for a retaliatory purpose.

4    <u>Id</u>.  Indeed, the Ninth Circuit in <u>Ariz. Students' Ass'n</u> made clear that "person's First

5    Amendment free speech right is at its highest when that person engages in 'core political

6    speech.'" <u>Id</u>. At 867.

7         Taken as true, Plaintiff's allegations establish strong circumstantial evidence which is

8    sufficient for § 1983 liability.  This can include not only the sequence of retaliatory events

9    following political pressure, but the temporal proximity of the protected conduct and the

10   retaliatory conduct.  <u>Ulrich v. City and County of San Francisco</u> 303 F.3d 968, 99 (9th Cir.

11   2002).  Plaintiff has offered several plausible explanations establishing why Wong's conduct,

12   and the conduct by Rosser and Summit which are to be alleged, was retaliatory in nature.

13        C.  **Plaintiff Has Adequately Stated a Section 1983 Claim Against President Wong.**

14        Defendants are mistaken in their contention that Plaintiff's allegations in support of her

15   Section 1983 claim against the President Wong is insufficient.

16        Defendants' argument that Plaintiff's Section 1983 claim against President Wong is

17   inadequately pled rests on what is at least a misunderstanding of Plaintiff's allegations as to

18   President Wong.  Defendants' characterization of those allegations is materially incorrect for the

19   following ten reasons:

20        First, Defendants' depiction of ¶49 of the FAC is incomplete.  That paragraph alleges

21   that Wong directed the interference and harassment with his final decision-making authority at

22   SFSU.  The paragraph goes on to note that the patterns of acts of interference and harassment

23   (which continues to the present day) "was so consistently executed as to constitute a

24   government 'custom.'"  The paragraph then goes on to indicate that this pattern and custom

25   resulted in SFSU violating its own travel policies, singled out Dr. Abdulhadi for repeated

26   scrutiny and engaged in other bureaucratic harassment that other faculty do not endure. This has

27   the effect of obstructing Dr. Abdulhadi from academic and scholarly obligations, which is

28

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

4

compounded by the fact that SFSU, under Wong's direction, has refused to support despite its contractual obligations to do so.  This has resulted in out of pocket expenses for Dr. Abdulhadi.

Second, Defendants omit ¶28 of the FAC which alleges that Wong (and other administrators that were present at the time), failed to object or to challenge high-ranking campus administrators' "anti-Palestinian slurs at Dr. Abdulhadi."

Third, Defendants' depiction of ¶29 omits vital allegations.  Namely, paragraph 29 of the FAC makes clear that Wong's motivations for ordering repeated investigations into Plaintiff's international research and lecturing trips was the "anti-Palestinian remarks" that Wong was acting upon.  Defendants' depiction of ¶ 29 omits the unconstitutional reason Plaintiff alleges that President Wong ordered these investigations.  These investigations, as alleged at ¶¶ 57, 48, 49, and 51 of the FAC, are an integral part of the unconstitutionally inappropriate environment that Defendants (including President Wong) have created for the Plaintiff.

Fourth, Defendants omit ¶ 51 which alleges that "Wong ordered Dean Kenneth Monteiro and possibly other officials to interfere with [Dr. Abdulhadi's] travel and to initiate pointless and time-consuming audits."

Fifth, Defendants omit ¶31(b) of the FAC wherein it is alleged that although "President Wong has explicitly and repeatedly denounced as 'anti-Semitism' acts or speech he has viewed, or claimed to view in this fashion, he does not similarly criticize anti-Arab or anti-Palestinian racism or Islamophobia by name, instead offering broad generalizations about 'racism' and 'discrimination'."   This paragraph establishes the impermissible motive for Wong's singling out Plaintiff for bureaucratic harassment.

Sixth, Defendants omit ¶ 47 of the FAC alleging that shortly after GUPS' rally to commemorate the anniversary of the Edward Said Memorial Mural, Wong, "under pressure from outside organizations, issued a statement claiming that chalked slogans and posters and the image on a sweatshirt celebrated violence and promoted anti-Semitism, even though none of the slogans, posters, or images mentioned Jews or used images associated with Jewishness."

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

5

1   Seventh, Defendants inaccurately depict ¶48 of the FAC. SFSU's depiction of the

2   paragraph simply states that Wong ordered three separate and redundant audits of Dr.

3   Abdulhadi's travels.  But the paragraph makes clear why the audits were not appropriate:

4   namely that as a result of outside pressure, Wong ordered these numerous and redundant audits

5   despite the fact that SFSU had already approved of these trips in advance and that the contract

6   gave Dr. Abdulhadi the right to university support for such international research trips.

7   Eighth, Defendants' depiction of ¶27 of the FAC is materially incorrect because it is

8   incomplete.  Paragraph 27 makes clear that President Wong began to express notable hostility

9   toward Plaintiff and the AMED program after returning from an all expenses paid trip to Israel

10   funded by an anti-Palestinian, pro-Israel organization, the Jewish Community Relations Council

11   (JCRC).  Defendants omit both President Wong's initial support for the AMED program and the

12   political motivations of his benefactor for his all expenses paid trip to Israel. Defendants also

13   omit that President Wong accepted "AMCHA's erroneous conflation of criticism of Israel with

14   anti-Semitism."

15   Ninth, Defendants omit ¶31(a) of the FAC which alleges that "[A]s recently as June 9,

16   2016, President Wong and Vice President Hong admitted to GUPS, whose membership is

17   overwhelmingly Arab and Muslim they were being targeted by University officials.  Wong and

18   Hong admitted that GUPS members were selectively prosecuted for acts undertaken by many

19   students who were neither Arab or Muslim or members of GUPS.  Many of these students are

20   enrolled in courses in AMED studies, the program run by Dr. Abdulhadi."This admission

21   evidences a retaliatory political motive for punishing Plaintiff who has supported and advised

22   this organization.

23   Tenth, Defendants omit ¶57 which alleges that during President Wong's time as SFSU's

24   President (and continuing President Corrigan's practices), SFSU "enacted policies and

25   consistent customs to interfere with and obstruct Plaintiff's professional productivity, to deny

26   her support regardless of the fact that it had been contractually agreed to or was otherwise

27   required by law, and to harass her in ways large and small so as to reduce her effectiveness, all

28

1   in retaliation for her exercise of her rights of freedom of speech and academic freedom."  Read

2   in conjunction with prior allegations wherein it is alleged that President Wong had final

3   decision-making authority (e.g. ¶49), ¶57 demonstrates the overall aims of Wong's policy vis-à-

4   vis Dr. Abdulhadi.

5          Read together, Wong has violated Plaintiff's civil rights in the following ways: President

6   Wong publicly admitted that the University owed AMED certain obligations that it never

7   fulfilled.  President Corrigan's retaliation against Plaintiff was limited to wrongfully denying

8   her the two promised faculty positions,  However, after pressure from an anti-Palestinian and

9   pro-Israel organization, the JCRC, and others, President Wong escalated this, overtly expressing

10  hostility towards Professor Abdulhadi, AMED and Palestinian students.  Specifically, Wong

11  accepted AMCHA's erroneous conflation of criticism with Israel with anti-Semitism and moved

12  to curtail Plaintiff's professionally related travel and to make that travel incredibly difficult by

13  ordering multiple time-consuming audits and erecting bureaucratic barriers.

14         Shortly after smearing the Plaintiff by falsely calling criticisms of Israel anti-Semitic,

15  Wong stood by idly while a high ranking campus administrator began to direct anti-Palestinian

16  slurs at Professor Abdulhadi in his presence.  Despite President Wong's role at SFSU, he did

17  nothing to object or challenge such remarks, thus effectively, condoning and ratifying them.

18         President Wong acted on outside pressure and on these anti-Palestinian remarks by

19  "ordering repeated investigations into Plaintiff's international research and lecturing trips, which

20  were supported pursuant to Plaintiff's contract with SFSU."  SFSU, under President Wong's

21  direction, "revoked authorization for Plaintiff's 2014 research trip to Palestine even though it

22  had already been approved."  What followed was "a campaign of harassing inquisition into

23  Plaintiff's scholastically-related travel which continues to this day."

24         The objective of "this campaign of discriminatory and unending harassment is to

25  establish a work environment that is so hostile and inimical to Dr. Abdulhadi's research and

26  academic pursuits that she either resigns her position or at least spends most of her time locked

27  in administrative battles, thus reducing her energy, time, and effectiveness for her scholarship,

28

1    to advocate for teaching, publishing and protecting her students, and engaging in service as a

2    public intellectual." (FAC ¶ 31). Defendants, including President Wong, engage in the

3    aforementioned campaign at the behest of outside donors and influential political figures who

4    harbor anti-Arab and anti-Muslim biases.  This is evidenced by the fact that President Wong's

5    June 9, 2016 admission that GUPS, was "being targeted by University officials" and its

6    members were being "selectively prosecuted." (FAC ¶31(a)).

7            To aggravate matters, President Wong has even wrongfully accused GUPS, a student

8    group that Dr. Abdulhadi advises of anti-semitic conduct.  This, despite the fact that the

9    allegedly anti-Semitic mural did not mention Jews or even use images associated with

10   Jewishness. By wrongly accusing GUPS, a student group that Dr. Abdulhadi advises, of anti-

11   semitic conduct, Wong created an unconstitutionally hostile environment for Dr. Abdulhadi.

12           Further, President Wong, succumbing to outside political pressures, ordered redundant

13   and inappropriate audits of Dr. Abdulhadi's travels despite prior approval of these trips in

14   advance.  Indeed, in violation of SFSU's own travel policies, SFSU, under President Wong's

15   direction, has canceled a pre-approved trip, singled out Plaintiff "for repeated scrutiny of how

16   she spends her authorized budget for research-related travel, has demanded justifications of her

17   trips not asked of other faculty, repeatedly claimed to lose documents related to travel and

18   thereby forcing Plaintiff to go through bureaucratic acrobatics which distract her from research

19   and scholarly endeavors.  Plaintiff has also had to pay out of pocket for certain expenses due to

20   President Wong's SFSU delays in reimbursement and other administrative pettiness. (FAC ¶49.)

21   President Wong even explicitly directed Dean Kenneth Monteiro and possibly other officials to

22   interfere with Plaintiff's travel and to initiate pointless and time-consuming audits.  (FAC ¶ 51.)

23   To add insult to injury, despite Professor Abdulhadi's impressive and extensive credentials on

24   applicable subject matters, President Wong effectively excluded her from the Presidential Task

25   Force on "Campus Climate" in May 2017.  (FAC ¶54.)

26

27

28

All of President Wong's acts were done as part of an intentional campaign to interfere and obstruct Plaintiff's professional productivity in retaliation of her exercise of her rights of freedom of speech and academic freedom.

Plaintiff believes that her claim against Dr. Wong has been adequately plead.  However, out of an abundance of caution, should the Court determine that Plaintiff has not adequately pled allegations in support of her 1983 claim against President Wong, Plaintiff respectfully requests leave to amend to provide additional allegations.

The Plaintiff's allegations and their significance may be summarized as follows:

| Par. # | Summary | Significance |
|---|---|---|
| 49 | At the direction of President Wong, a final decision maker, Plaintiff endures interference and harassment that is so consistently executed that it constitutes a government custom.   SFSU -violates its own travel policies and singles out Plaintiff for repeated scrutiny and bureaucratic harassment.  This impedes Plaintiff's academic and scholarly work by adding to her already unconscionably burdensome administrative obligations. | Identifies unconstitutional policy |
| 57 | President Wong continues President Corrigan's policies and customs to interfere with and obstruct Plaintiff's professional productivity, deny her benefits that SFSU was obligated to provide to her, and harass her to reduce her effectiveness in retaliation for her exercise of her rights of freedom of speech and academic freedom. | Identifies unconstitutional policy of retaliation for Plaintiff's exercise of her rights of freedom of speech and academic freedom. |
| 28 | High-ranking campus administrators directed anti-Palestinian slurs towards Plaintiff in the presence of | President Wong's ratification of overt acts in furtherance of |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

9

Case No. __4:18-cv-04662

| Par. # | Summary | Significance |
|---|---|---|
| | President Wong who neither objects to nor challenges these remarks but rather condones them. | the unconstitutional policy identified in ¶49 and ¶57. |
| 29 | President Wong enthusiastically acts upon the high-ranking campus administrators' anti-Palestinian remarks by ordering repeated investigations into Plaintiff's international research and lecturing trips despite the fact that SFSU was obligated to support such international research and lecturing trips. | President Wong's overt act in furtherance of the unconstitutional policy identified in ¶49 and ¶57. |
| 51 | President Wong orders Dean Kenneth Monteiro to interfere with Plaintiff's travel and to initiate pointless and time-consuming audits. | President Wong's overt act in furtherance of the unconstitutional policy identified in ¶49 and ¶57. |
| 47; fn. 3 | President Wong wrongfully accuses GUPS, a political student group that advocates for awareness of the Palestinian struggle for justice that Dr. Abdulhadi advised, of anti-Semitism. | President Wong's overt act consistent with the unconstitutional policy identified in ¶49 and ¶57. |
| 48 | In January 2014, Plaintiff, an international scholar, led a research trip to Palestine that included other academics (including another SFSU professor).  Pursuant to outside pressure, President Wong ordered three separate and redundant audits into Plaintiff's travels including the travels that SFSU had already reviewed and approved of in advance. | President Wong's overt act consistent with the unconstitutional policy identified in ¶49 and ¶57. |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

10

| Par. # | Summary | Significance |
|---|---|---|
| 27 | Although President Wong supported the AMED program when he came to SFSU in 2012, he expressed notable hostility toward AMED and Plaintiff after a pro-Israel and anti-Palestinian organization sponsored Wong's travel to Israel.  Wong then wrongfully equated criticism of Israel with anti-Semitism. | Explanation of motivation behind unconstitutional policy identified in ¶49 and ¶57. |
| 31(a) | As recently as June 9, 2016, President Wong admitted to GUPS (a political student group that Plaintiff advises), that they were being targeted by University officials and that GUPS members were being selectively prosecuted. | President Wong's confession of a retaliatory political motive for punishing plaintiff and an overt act to retaliate against her for her support of a political student organization. |

### D.   Plaintiff Seeks Leave to Amend Her Claims Against Sue V. Rosser, Ph.D.- Provost and Vice President for Academic Affairs (August 2009-October 2016)

As to Defendant Rosser, Plaintiff seeks leave to amend to allege, *inter alia,* the following facts:

In the Spring of 2015 Provost Rosser blocked a university grant Plaintiff was seeking to write a book with Simona Sharoni, an Israeli feminist colleague.  Plaintiff reported to SFSU that the University of Washington Press had agreed it would publish the book.  Plaintiff was later informed by SFSU's Office of Research and Sponsored Programs that Provost Rosser's "office" denied the funding, despite excellent reviews from external reviewers whom the University hired to review the proposal.

In the Spring of 2016 Provost Rosser directed Dean Monteiro to investigate the contractual agreement that the University would fund Plaintiff's travel, giving Monteiro the impression that Rosser wanted him to cancel it.

E. **Plaintiff Seeks Leave to Amend Her Claims Against Jennifer Summit, Ph.D.- Interim Provost (October 2016 – March 2018) and Provost (March 2018 – Present)**

As to Defendant Summit, Plaintiff seeks leave to amend to allege, *inter alia,* the following facts:

In the Fall of 2017, Provost Summit delayed Plaintiff's delayed travel authorization to Palestine insisting that forms be changed to read "in consultation with President's office" regarding the Memorandum of Understanding between SFSU and an-Najah National University in Palestine.  This new requirement was imposed after a right-wing "think tank" launched a petition smearing Plaintiff as a terrorist apologist and demanding cancellation of the Memorandum of Understanding.

In February of 2018, when Plaintiff requested an operating budget for AMED that would support administrative assistants and faculty, Provost Summit refused, stating that support for the AMED program should come out of what Plaintiff had previously negotiated for herself in her contract.

III. **CONCLUSION**

The first, second, sixth, seventh, eighth, and ninth causes of action should be dismissed without prejudice to Plaintiff refiling them in state court, pursuant to Plaintiff's request for voluntary dismissal.

The third, fourth, and fifth causes of action should be dismissed pursuant to Plaintiff's request for voluntary dismissal.

The tenth cause of action against the Board of Trustees of California State University should be dismissed pursuant to Plaintiff's request for voluntary dismissal.

1    Defendants' motion to dismiss the tenth cause of action against Defendant Wong should
2  be DENIED.  If the Court determines to grant Defendants' motion to dismiss the tenth cause of
3  action against Defendant Wong, Plaintiff respectfully requests leave to amend.  As to Plaintiff's
4  tenth cause of action against Defendants Rosser and Summit, Plaintiff respectfully requests
5  leave to amend.

6

7  DATED:  February 12, 2019                LAW OFFICE OF MARK ALLEN KLEIMAN
8                                           MARK A. KLEIMAN (SBN 115919)

9

10

11                                         By:   */s/ Mark A. Kleiman*
12                                               MARK  A. KLEIMAN

13                                         LAW OFFICE OF BEN GHARAGOZLI
                                           BEN GHARAGOZLI (SBN 272302)
14

15                                         By:   */s/ Ben Gharagozli*
16                                               BEN GHARAGOZLI

17                                         Attorneys for Plaintiff RABAB ABDULHADI

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

13

Case No. __4:18-cv-04662