BRADLEY S. PHILLIPS (State Bar No. 85263)
Brad.phillips@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

ALISON F. KAROL (State Bar No. 408043)
Alison.karol@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-0913
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Defendants THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, LESLIE WONG, SUE V. ROSSER, and JENNIFER SUMMIT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| RABAB ABDULHADI,<br><br>            Plaintiff,<br><br>     vs.<br><br>BOARD OF TRUSTEES of the<br>CALIFORNIA STATE UNIVERSITY, et al.<br><br>            Defendants. | Case No. 4:18-cv-04662-YGR<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS THE FIRST AMENDED COMPLAINT (RULES 12(b)(1) & 12(b)(6))**<br><br>Judge:   Judge Yvonne Gonzalez Rogers<br>Date:    March 6, 2019<br>Time:    2:00 p.m |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's opposition requests dismissal of all but her tenth claim for relief against individual Defendant President Wong. CSU maintains, for the reasons stated in its opening brief, that the Court should dismiss the nine claims with prejudice. Moreover, Plaintiff's tenth claim fails as well, because Plaintiff has not, on her second attempt, alleged facts sufficient to support it. Plaintiff's First Amended Complaint should therefore be dismissed in its entirety, with prejudice.

## II. ARGUMENT

### A. Plaintiff's Section 1983 Claim Against President Wong Should Be Dismissed

Plaintiff fails to state a claim under 42 U.S.C. § 1983 against President Wong in either his official or personal capacity.

First, Plaintiff does not establish that President Wong may be sued in his official capacity in the absence of specific allegations showing his personal responsibility for the alleged constitutional violation. "An official-capacity suit 'represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1127 (9th Cir. 2013) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In the absence, as here, of plausible allegations showing an official "law or policy [that is] challenged as a constitutional violation" a plaintiff is "required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Id*.

Plaintiff has not sufficiently pleaded any unconstitutional law or policy such that she may plead an action against CSU, let alone one that was implemented to retaliate against her for constitutionally protected conduct. *See Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 39 (2010) (holding that in order for civil rights plaintiffs to successfully sue municipal entity under § 1983, they must show that their injury was caused by municipal policy or custom, irrespective of whether the remedy sought is money damages or prospective relief). In *Arizona Students' Association v. Arizona Board of Regents*, 824 F.3d 858 (9th Cir. 2016), on which Plaintiff relies, the entity defendant allegedly called a special meeting to "chang[e] [its] policies" and then

"adopted the policy revisions proposed." *Id*. at 863.  The plaintiff in *Arizona Students'* alleged that the entity "had modified its policies to retaliate against" the plaintiff for its "exercise of its First Amendment free speech rights." *Id*.  There was both direct and circumstantial evidence to establish that the defendant had changed the policy based on a retaliatory motive. *Id*.  The Ninth Circuit held that "a change in policy undertaken for retaliatory purposes that results in the deprivation . . . implicates the First Amendment." *Id*. at 870.

Plaintiff has not sufficiently alleged any such policy here, and, even if she had, she has not sufficiently alleged that the motivation for any purported policy was to retaliate against her for protected speech.  Plaintiff merely proclaims in conclusory fashion that "SFSU 'enacted policies and consistent customs to interfere with and obstruct Plaintiff's professional productivity . . . in retaliation for her exercise of her rights.'" (Opp. at 6-7).  Plaintiff does not actually identify any particular policy of Defendant's, rather she merely argues that the allegedly retaliatory actions against her personally were "consistent" enough, in and of themselves, to constitute a policy or practice.  Such is not sufficient to state a claim.  Under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978), a plaintiff may sue local entities directly under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision *officially adopted and promulgated* by that [entity's] officers." *Id*. Plaintiff points to no such policy.

Plaintiff has also failed to allege facts sufficient to establish that any retaliatory policy or custom (to the extent that repeated audits may be seen as a "custom"), even if there were one, was motivated by a retaliatory intent.  The "circumstantial evidence" Plaintiff does allege is merely permissible behavior on the part of the university (such as conducting an audit), to which Plaintiff conclusorily attributes an impermissible motive based on what *other individuals* not involved in the allegedly retaliatory actions have said or done. Opp. at 4.  For example, Plaintiff alleges that "outside pressure groups complained" in March 2014 about a trip she took to Palestine in January 2014.  FAC ¶ 48.  She then alleges that, in May 2014, President Wong "ordered three separate . . . audits into Dr. Abdulhadi's travels." *Id*.  These two alleged facts are not, however, sufficient to show that "the protected activity was a substantial motivating factor in the defendant's conduct—

i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *See Ariz. Students*, 824 F.3d at 867.

Plaintiff here seems to be alleging that, because outside groups complained, President Wong "must have been" motivated by a desire to chill her speech by ordering audits. While a plaintiff may establish motive "using direct or circumstantial evidence," and "a plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false," speculation based on such proximity is not sufficient. The plaintiff must "allege[] plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." *Ariz. Students*, 824 F.3d at 870. In *Arizona Students*, the circumstantial evidence showed both that several members *of the defendant organization* had criticized plaintiff for engaging in protected activity *and* that the retaliatory conduct *by that organization* was temporally proximate to the protected behavior. *Id*. at 870-71. Here, by contrast, Plaintiff is forced to rely on temporal proximity alone, because there are no alleged facts sufficient to attribute these outside groups' actions or motivations to President Wong. "[Abdulhadi] has not provided evidence that [President Wong] expressed opposition to [her] speech or evidence that the reasons for" the adverse action "were pretextual." *Willie v. Nevada, ex rel. Nevada Dept. of Public Safety*, 2007 WL 1454964 (9th Cir. 2007). Moreover, while there is no "bright-line rule about the timing of retaliation," *Coszalter v. City of Salem*, 320 F.3d 968, 978 (2003), the four months between Plaintiff's January 2014 research trip (the protected activity) and President Wong's May 2014 audits (the alleged retaliatory conduct) do not support a strong inference of retaliation. FAC ¶ 48; *see Coszalter*, *Id.* at 978 ("Beyond the bare facts of the timing, plaintiffs in this case provided additional evidence."); *Bell v. Clackamas Cty.*, 341 F.3d 858 (9th Cir. 2003) ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence *in some cases*.") (emphasis added). While temporal proximity can support an inference of retaliation, clearly temporal proximity does not *per se* establish retaliatory motive. That the audits came after "outside pressure groups complained" does not amount to plausible evidence that President Wong was therefore "motivated by retaliation for

[Abdulhadi] having engaged in a protected activity under the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). As for Plaintiff's other allegations, such as SFSU's delayed or rejected reimbursements and denial of travel authorization, she provides no evidence of any particular motive at all. FAC at ¶¶ 49-50.

Paragraphs 27-29 of Plaintiff's FAC, which Plaintiff highlights in opposition, likewise do not properly allege sufficient evidence of a retaliatory motive on the part of President Wong. FAC ¶¶ 27-29. Plaintiff's contention that President Wong began to "express notable hostility," without any specifics whatsoever, is insufficient. *Id*. at ¶ 27; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (internal citations omitted). That the "AMCHA Initiative" "falsely" accused Dr. Abdulhadi of anti-Semitism, Opp. at 7, may not, without more, be attributed to President Wong. Moreover, Plaintiff presents no support for her claims either that President Wong "enthusiastically acted on . . . the anti-Palestinian remarks" of *others* or that any actions he did take were motivated by others' remarks. *Id*. at ¶¶ 28-29. Plaintiff's allegations with respect to the Task Force on "Campus Climate" and other campus initiatives suffer the same fatal flaw. FAC ¶¶ 54-57. Plaintiff presents no nexus between any retaliatory motive or intent to chill speech and Plaintiff's lack of invitation to join the Task Force. *Id*.

Moreover, while plaintiffs may establish the liability of municipal defendants "(1) by showing that the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision; or (2) by showing that the an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate," *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002), Plaintiff here, despite using the words "final

decision-making authority," (Opp. at 7), has not alleged sufficient facts to show that President Wong had such authority.

Plaintiff has not shown that President Wong was the final policymaking authority for the decisions affecting her rights. "'The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.'" *Id*. (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83). Plaintiff has not adequately pleaded that President Wong is the final decision-maker for CSU's policies on audits or investigations. CSU's Chancellor sits at the pinnacle of CSU's decision-making hierarchy, not President Wong. "The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question . . . [T]he cases limit municipal liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final *in the special sense that there is no higher authority*.'" *Harman v. City & Cty. of San Francisco*, 136 Cal. App. 4th 1279, 1298 (2006) (emphasis added) (quoting *Gernetzke v. Kenosha School Dist. No. 1*, 274 F.3d 464, 468-69 (7th Cir. 2001)).

Second, Plaintiff has not "plead[ed] specific facts regarding [President Wong's] conduct sufficient to plausibly state a cause of action against [President Wong] individually." *See Clark v. Cal. Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 814-15 (N.D. Cal. 2016). "To state a valid § 1983 claim, 'a plaintiff must plead that each government-official defendant, through the official's own individual actions, ha[s] violated the Constitution.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012). "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct." *Ariz. Students*, 824 F.3d at 867.

Plaintiff's only allegations of actions by President Wong related to Plaintiff are:

- "Upon President Wong's return from Israel [in 2012] he began to express notable hostility toward Professor Abdulhadi …."  (FAC ¶ 27.)
- "President Wong … order[ed] repeated investigations into Plaintiff's international research and lecturing trips …."  (FAC ¶ 29.)
- "In May of 2014 President Wong ordered three separate (and redundant) audits into Dr. Abdulhadi's travels …."  (FAC ¶ 48.)
- "The pattern of acts was undertaken at the direction of President Wong, who held final decision-making authority at SFSU …."  (FAC ¶ 49.)
- "These adverse actions were directed, supervised and/or executed by Defendant[] Wong …."  (FAC ¶ 159.)

The only allegations that are not general and wholly conclusory (rather than "individual" and "specific," as required by the case law) are that President Wong ordered investigations and audits into Plaintiff's travel expenses.  This is not enough to support a Section 1983 damages claim against him.

Plaintiff's inability to establish the required nexus of facts showing that President Wong acted with a specific intent to retaliate against Plaintiff for her constitutionally protected free-speech activities is fatal to her claim.  Plaintiff's Tenth Cause of Action against President Wong should therefore be dismissed with prejudice.

**B.**    **Plaintiff's Claims Against Jennifer Summit and Sue V. Rosser Should Be Dismissed With Prejudice**

Plaintiff acknowledges that the conclusory allegations against Defendants Rosser and Summit in her FAC were unquestionably not enough to support a Section 1983 claim against them.  The amendments Plaintiff seeks to add to cure these defects would be futile.  FAC ¶ 159; Opp. at 11.  Because Plaintiff's proposed amendments do not establish a retaliatory motive on the part of Defendants Rosser and Summit for any constitutionally protected conduct on the part of Abdulhadi, Plaintiff's claims with respect to these defendants should be dismissed with prejudice.

That Defendant Rosser's office denied Plaintiff funding for her book, without more, does not establish any retaliatory motive based on previous protected behavior.  Opp. at 11.  Likewise,

Plaintiff's allegations that Defendant Summit delayed her travel authorization or refused her increased funding do not establish a sufficient nexus between the Defendant's actions and an intent to chill speech. *Ariz. Students*, 824 F.3d at 867. The intent or motives of a "right-wing 'think tank' [that] launched a petition" against Plaintiff may not be attributed to Defendant Summit without specific allegations establishing that Defendant Summit adopted such an intent or motive. Opp. at 12.

Since Plaintiff's proposed amendments would not cure the deficiencies of her pleadings, Plaintiff's section 1983 claims against Defendants Rosser and Summit should be dismissed with prejudice.

## III. CONCLUSION

Defendants respectfully submit that all of Plaintiff's claims should be dismissed with prejudice.

DATED: February 19, 2019

MUNGER, TOLLES & OLSON LLP
  BRADLEY S. PHILLIPS
  ALISON F. KAROL

By: */s/ Bradley S. Phillips*
  BRADLEY S. PHILLIPS
Attorneys for Defendants THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, LESLIE WONG, SUE V. ROSSER, and JENNIFER SUMMIT