1  BRADLEY S. PHILLIPS (State Bar No. 85263)
   Brad.phillips@mto.com
2  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, Fiftieth Floor
3  Los Angeles, California 90071-3426
   Telephone:     (213) 683-9100
4  Facsimile:     (213) 687-3702

5

   ALISON F. KAROL (State Bar No. 408043)
6  Alison.karol@mto.com
   MUNGER, TOLLES & OLSON LLP
7  560 Mission Street, Twenty-Seventh Floor
   San Francisco, California 94105-0913
8  Telephone:     (415) 512-4000
   Facsimile:     (415) 512-4077
9
   Attorneys for Defendants LESLIE WONG, SUE
10 V. ROSSER, and JENNIFER SUMMIT

11

12                          UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

14

15

16 | RABAB ABDULHADI, | Case No. 4:18-cv-04662-YGR |
| --- | --- |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (RULE 12(b)(6))** |
| vs. | |
| LESLIE WONG; SUE V. ROSSER; JENNIFER SUMMIT; and DOES 1-100; inclusive | |
| Defendants. | Judge: Judge Yvonne Gonzalez Rogers<br>Date: July 9, 2019<br>Time: 2:00 p.m |

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on July 9, 2019 at 2:00 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Yvonne Gonzalez Rogers, located at Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, California, Defendants Leslie Wong, Sue V. Rosser, and Jennifer Summit will and hereby do move to dismiss Plaintiff's Second Amended Complaint ("SAC").  This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendants' Request for Judicial Notice and Declaration in Support thereof, all pleadings and papers on file, and such other matters as may be presented to this Court.

DATED:  May 13, 2019              MUNGER, TOLLES & OLSON LLP
                                         BRADLEY S. PHILLIPS
                                         ALISON F. KAROL


                                  By:     */s/ Bradley S. Phillips*
                                         BRADLEY S. PHILLIPS
                                  Attorneys for Defendants LESLIE WONG, SUE V. ROSSER, and JENNIFER SUMMIT

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF RELIEF SOUGHT ................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................1

I. INTRODUCTION......................................................................................................................1

II. PLAINTIFF'S SECOND AMENDED COMPLAINT ............................................................1

III. LEGAL STANDARD ................................................................................................................2

IV. ARGUMENT ..............................................................................................................................2

    A. Plaintiff's Claim for Injunctive Relief Against Defendants in Their Official Capacities Fails Because She Has Not Established a Practice, Policy, or Procedure Violating Her Rights ................................................................................2

        1. Plaintiff Has Not Identified an Unconstitutional Practice, Policy, or Procedure................................................................................................2

        2. Plaintiff Has Failed to Allege Any Defendant Had Final Policymaking Authority ..........................................................................4

        3. Plaintiff Has Also Failed to Plead Retaliatory Intent ....................................5

    B. Plaintiff Has Failed to State a Claim For Damages Against Defendants in Their Individual Capacities ................................................................................8

        1. Plaintiff Has Failed to State a Claim for Damages Against President Wong ................................................................................................8

        2. Plaintiff Fails to State a Claim for Damages Against Defendants Rosser and Summit........................................................................10

V. CONCLUSION ........................................................................................................................13

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Ariz. Students' Assoc. v. Ariz. Bd. of Regents*,
 824 F.3d 858 (9th Cir. 2016) ................................................................................................ 1, passim

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................. 2, 6, 10

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................................. 8, 10

*Bell v. Clackamas Cty.*,
 341 F.3d 858 (9th Cir. 2003) ........................................................................................................ 7

*CarePartners, LLC v. Lashway*,
 545 F.3d 867 (9th Cir. 2008) .................................................................................................. 11, 12

*City of St. Louis v. Praprotnik*,
 485 U.S. 112 (1988) ...................................................................................................................... 4

*Clark v. Cal. Dep't of Forestry & Fire Prot.*,
 212 F. Supp. 3d 808 (N.D. Cal. 2016) ......................................................................................... 8

*Coszalter v. City of Salem*,
 320 F.3d 968 (9th Cir. 2003) ........................................................................................................ 7

*Cousins v. Lockyer*,
 568 F.3d 1063 (9th Cir. 2009) ...................................................................................................... 2

*Downs v. Los Angeles Unified Sch. Dist.*,
 228 F.3d 1003 (9th Cir. 2000) .................................................................................................... 12

*Gant v. Cty. of Los Angeles*,
 772 F.3d 608 (9th Cir. 2014) ........................................................................................................ 2

*Gernetzke v. Kenosha Sch. Dist. No. 1*,
 274 F.3d 464 (7th Cir. 2001) ........................................................................................................ 4

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) .................................................................................................. 4, 6

*Hafer v. Melo*,
 502 U.S. 21 (1991) ........................................................................................................................ 3

*Idaho v. Coeur d'Alene Tribe of Idaho*,
 521 U.S. 261 (1997) ...................................................................................................................... 2

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003).........................................................................................................2

*Lacey v. Maricopa Cty.*,
   693 F.3d 896 (9th Cir. 2012).........................................................................................................11

*Los Angeles v. Humphries*,
   562 U.S. 29 (2010) .........................................................................................................................3

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008).........................................................................................................2

*Monell v. Dep't of Soc. Servs. of N.Y.*,
   436 U.S. 658 (1978) .......................................................................................................................3

*O'Brien v. Welty*,
   818 F.3d 920 (9th Cir. 2016).........................................................................................................7

*OSU Student All. v. Ray*,
   699 F.3d 1053 (9th Cir. 2012)...................................................................................................8, 10

*Pickering v. Board of Education of Township High School Disttrict 205*,
   391 U.S. 563 (1968) ........................................................................................................11, 12, 13

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) .....................................................................................................................12

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001).........................................................................................................4

*Ulrich v. City and Cty. of San Francisco*,
   308 F.3d 968 (9th Cir. 2002).......................................................................................................4, 5

*Will v. Mich. Dept. of State Police*,
   491 U.S. 58 (1989) .........................................................................................................................2

*Willie v. Nevada, ex rel. Nev. Dept. of Pub. Safety*,
   No. 05-15903, 2007 WL 1454964 (9th Cir. May 17, 2007) .........................................................6

*Ex Parte Young*,
   209 U.S. 123 (1908) .......................................................................................................................2

**STATE CASES**

*Harman v. City & Cty. of San Francisco*,
   136 Cal. App. 4th 1279 (2006)......................................................................................................4

**FEDERAL STATUTES**

42 U.S.C. § 1983 ................................................................................................................ 1, passim

Federal Rule of Civil Procedure 12 ................................................................................................2

**STATEMENT OF RELIEF SOUGHT**

Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice the Second Amended Complaint for failure to state a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff Rabab Abdulhadi, a Professor at San Francisco State University, purports in her SAC to state one claim for relief under 42 U.S.C. § 1983 against the Defendants based on an allegation of retaliation for her constitutionally protected conduct.  She seeks injunctive relief against the Defendants in their official capacities and damages against Defendants in their individual capacities.  Plaintiff's claim should be dismissed with prejudice because, on her third attempt, she has failed to cure the deficiencies identified by the Court and Defendants in her First Amended Complaint and has not alleged facts sufficient to support her claim.  Plaintiff has failed to adequately allege (1) a practice, policy, or procedure violating her rights, *see Ariz. Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016); or (2) that any of the Defendants retaliated against her based on her protected conduct in their individual capacities.

**II.    PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff filed her original complaint on August 2, 2018, and her First Amended Complaint ("FAC") on January 14, 2019.  The Court dismissed with leave to amend Plaintiff's FAC on March 14, 2019.  Plaintiff filed her SAC on April 11, 2019.  The SAC names as defendants three individual CSU officials.  (SAC ¶¶ 3, 4, 5.)  Abdulhadi alleges that each of the Defendants retaliated against her for engaging in constitutionally protected conduct in violation of 42 U.S.C. § 1983.  (SAC ¶ 1.)  Specifically, Abdulhadi alleges, among other things, that, because she is an "outspoken advoca[te] for justice for and in Palestine" (*id.* ¶ 28), Defendants have succumbed to "outside pressure groups" (*id.* ¶ 68), and influential donors' desire to retaliate against her and "stifle [her] political speech" (*id.* ¶ 29), by conducting audits into her research trips and other travel (¶ 68), refusing or delaying travel reimbursements (*id.* ¶ 70), and erecting barriers to her ability to hire additional faculty and staff for her department (*id.* ¶¶ 22–26).   Plaintiff seeks

compensatory and punitive or exemplary damages, injunctive relief, attorney's fees, and costs. (*Id.*, Prayer for Relief.)

### III. LEGAL STANDARD

A defendant is entitled to dismissal under Rule 12(b)(6) "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a complaint must plead facts "to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067–68 (9th Cir. 2009) (citation omitted).

In evaluating a Rule 12(b)(6) motion, the Court accepts as true all material facts alleged in the complaint and construes them in the light most favorable to the non-moving party. *Gant v. Cty. of Los Angeles*, 772 F.3d 608, 614 (9th Cir. 2014). The Court does not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### IV. ARGUMENT

#### A. Plaintiff's Claim for Injunctive Relief Against Defendants in Their Official Capacities Fails Because She Has Not Established a Practice, Policy, or Procedure Violating Her Rights

##### 1. Plaintiff Has Not Identified an Unconstitutional Practice, Policy, or Procedure

A suit against Defendants in their official capacities is "no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). "Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state," *Ariz. Students*, 824 F.3d at 865, under *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may ordinarily bring a claim against a state entity for prospective relief based on "[a]n allegation of an ongoing violation of federal law," *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997). "To bring such a claim," however, "the plaintiff must identify a practice, policy, or procedure that animates the constitutional violation at issue." *Ariz. Students*, 824 F.3d at 865

(citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991) and *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)).

Plaintiff attempts to establish liability on the part of CSU by alleging "a pattern of interference and harassment . . . undertaken at the direction of President Wong, who held final decision-making authority at SFSU, and was so consistently executed as to constitute a governmental 'custom' as defined by *Los Angeles v. Humphries*, 562 U.S. 29, 36 (2010)." (SAC ¶ 69.) Plaintiff has not sufficiently pleaded any unconstitutional law, policy, or practice at CSU, let alone one that was implemented to retaliate against her for her constitutionally protected speech. *See Humphries*, 562 U.S. at 39 (holding that in order for civil rights plaintiffs to successfully sue municipal entity under section 1983, they must show that their injury was caused by municipal policy or custom, irrespective of whether the remedy sought is money damages or prospective relief).

Plaintiff has not sufficiently alleged any such policy here, and, even if she had, she has not sufficiently alleged that the motivation for any purported policy was to retaliate against her for her protected speech. Plaintiff merely proclaims in conclusory fashion that "a pattern of interference and harassment . . . . was undertaken at the direction of President Wong . . . and was so consistently executed as to constitute a governmental 'custom,'" and that "SFSU enacted policies and consistent customs to interfere with and obstruct Plaintiff's professional productivity." (SAC at ¶¶ 69, 78.) Plaintiff does not actually identify any particular policy of Defendants'; rather, she argues that the allegedly retaliatory actions against her personally were "consistent" enough, in and of themselves, to constitute an unconstitutional policy or practice. That is not sufficient to state a claim. A plaintiff may sue local entities directly under § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision *officially adopted and promulgated* by that [entity's] officers." *Monell*, 436 U.S. at 690 (emphasis added). Plaintiff points to no such policy.

### 2. Plaintiff Has Failed to Allege Any Defendant Had Final Policymaking Authority

Plaintiff's attempt to establish that President Wong's actions constitute "[an unconstitutional] practice, policy, or procedure," *Ariz. Students'*, 824 F.3d at 865, because he has "'final decision making authority'" (SAC ¶ 10), on campus likewise fails.  While liability may sometimes be established "(1) by showing that the decision-making official was, as a matter of state law, a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy' in the area of decision; or (2) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate," *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002) (citation omitted), Plaintiff here, despite using the words "final decision making authority" (SAC ¶ 10), has not alleged sufficient facts to show that President Wong had such authority.

Only the "'conferral' . . . of final authority makes the 'delegate' the final authority." *Gernetzke v. Kenosha Sch. Dist. No. 1*, 274 F.3d 464, 468–69 (7th Cir. 2001) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988)).  In order to establish liability for the act of a final policymaking official, the "official who commits the alleged violation of the plaintiff's rights [must have] authority that is final *in the special sense that there is no higher authority*."  *Harman v. City & Cty. of San Francisco*, 136 Cal. App. 4th 1279, 1298 (2006) (emphasis added) (quoting *Gernetzke*, 274 F.3d at 468–69).  While President Wong may be the "Chief Executive Officer" at SFSU, he is not the Chief Executive Officer of CSU and he reports to a higher authority within the CSU system.  (*See* Request for Judicial Notice ("RJN") Ex. D, CSU's Board of Trustees Standing Orders, revised March 19–21, 2018, at 4 ("The Presidents of the California State University campuses are the chief executive officers for their campuses and have authority and responsibility, *with appropriate consultation*, to take whatever actions are necessary, *consistent with Trustee and Chancellor's policy* . . . ." (emphasis added)).)  "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

(9th Cir. 2001). Plaintiff has not sufficiently alleged that President Wong is the final decision-maker for CSU's policies on audits or investigations.

It is even more clear that Plaintiff alleges no facts showing that Defendants Rosser or Summit, in their official capacities, adopted (or had the authority to adopt) an official policy or custom to retaliate against her. Plaintiff's statements about "shared governance" (SAC ¶¶ 11, 14) do not amount to an allegation sufficient to state a claim that either Defendant Rosser or Summit was "a final policymaking authority." *Ulrich*, 308 F.3d at 984–85.

### 3.     **Plaintiff Has Failed to Plead Retaliatory Intent**

Even if any of the Defendants' actions could be considered official school "policy," Plaintiff has also failed to allege facts sufficient to establish that any policy or custom affirmatively adopted by the Defendants (to the extent that repeated audits of a single individual may be seen as a "custom" or that unilaterally withdrawing funding for a single faculty position may be considered a "policy") was motivated by a retaliatory intent. The "circumstantial evidence" Plaintiff does allege is merely permissible behavior on the part of the university (such as conducting an audit or various reviews) to which Plaintiff conclusorily attributes an impermissible motive based on what *other individuals* not involved in the allegedly retaliatory actions have said or done. (SAC ¶¶ 29–35, 67.) For example, Plaintiff alleges that "outside pressure groups complained" in March 2014 about a trip she took to Palestine in January 2014. (*Id.* ¶ 68.) She then alleges that, in May 2014, President Wong "ordered three separate . . . audits into Dr. Abdulhadi's travels." (*Id*.) These two alleged facts are not, however, sufficient to show that "the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *See Ariz. Students*, 824 F.3d at 867.

Plaintiff here seems to be alleging that, because outside groups complained, President Wong "must have been" motivated by a desire to chill her speech by ordering audits. Yet she does not allege that there was no other rational basis for the University officials' decisions concerning the audits or her travel. While a plaintiff may establish motive "using direct or circumstantial evidence," and "a plaintiff may rely on evidence of temporal proximity between the protected

-5-                                               Case No. 4:18-cv-04662-YGR
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false," speculation based on such proximity alone is not sufficient. The plaintiff must "allege[] plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." *Id*. at 870.

In *Arizona Students'*, the circumstantial evidence showed both that several members *of the defendant organization* had criticized plaintiff for engaging in protected activity *and* that the retaliatory conduct *by that organization* was temporally proximate to the protected behavior. *Id*. at 870–71. Here, by contrast, Plaintiff is forced to rely on temporal proximity alone, because there are no alleged facts sufficient to attribute the outside groups' actions or motivations to President Wong. In fact, Abdulhadi asks the Court to accept as plausible, without any supporting factual allegations, that "VIP handling at the Ben Gurion airport" and a guided trip through Israel sufficiently brainwashed President Wong to "do[] the bidding of . . . anti-BDS donors" and "retaliat[e] against Dr. Abdulhadi for her political speech advocating for justice for and in Palestine." (SAC ¶ 40.) Plaintiff's contention that President Wong began to "express notable hostility" after his trip, without any specifics whatsoever, is insufficient. (SAC ¶ 41); *Iqbal*, 556 U.S. at 678–79 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (internal citations omitted)). The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*, 536 F.3d at 1055 (citation omitted). And the Court certainly should not, and could not reasonably, infer an anti-Palestinian motivation from the mere fact that President Wong visited Israel.

Abdulhadi has not put forth sufficient allegations "that [President Wong] expressed opposition to [her] speech or evidence that the reasons for" the adverse action "were pretextual." *Willie v. Nevada, ex rel. Nev. Dept. of Pub. Safety*, No. 05-15903, 2007 WL 1454964 (9th Cir. May 17, 2007). Moreover, while there is no "bright-line rule about the timing of retaliation,"

1  *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003), the four months between Plaintiff's
2  January 2014 research trip (the protected activity) and President Wong's May 2014 audits (the
3  alleged retaliatory conduct) do not support an inference of retaliation.  (SAC ¶ 68); *see Coszalter*,
4  320 F.3d at 978 ("Beyond the bare facts of the timing, plaintiffs in this case provided additional
5  evidence . . . ."); *Bell v. Clackamas Cty.*, 341 F.3d 858 (9th Cir. 2003) ("Temporal proximity
6  between protected activity and an adverse employment action can by itself constitute sufficient
7  circumstantial evidence . . . *in some cases*." (emphasis added)).  While temporal proximity can
8  support an inference of retaliation, temporal proximity cannot by itself establish retaliatory motive.
9  The mere fact that the audits came *after* "outside pressure groups complained" does not support a
10 reasonable inference that President Wong was therefore "motivated by retaliation for [Abdulhadi]
11 having engaged in a protected activity under the First Amendment."  *O'Brien v. Welty*, 818 F.3d
12 920, 932 (9th Cir. 2016).

13       As for Plaintiff's other allegations allegedly perpetrated by all of the Defendants, such as
14 SFSU's delayed or rejected reimbursements and denial of travel authorization, she provides no
15 factual support for any particular motive at all beyond vague and conclusory statements that the
16 actions were taken "to appease donors and influential political figures who themselves harbor
17 biases against . . . Arabs and/or Muslims" and complain about student protestors.  (SAC ¶¶ 45–
18 46.)  Plaintiff does not allege that there was no other legitimate basis for the actions.

19       Plaintiff presents no support for her claims either that President Wong "enthusiastically
20 acted on . . . the anti-Palestinian remarks" of *others* or that any actions he did take were motivated
21 by others' remarks.  (*Id*. ¶ 43.)  Plaintiff's allegations with respect to her alleged exclusion from
22 University task forces and other campus initiatives suffer the same fatal flaw.  (*Id*. ¶ 48.)  Plaintiff
23 presents no nexus between any retaliatory motive or intent to chill speech and Plaintiff's lack of
24 invitation to join the task forces and other campus initiatives.  (*Id*.)  Plaintiff's claim for injunctive
25 and declaratory relief against Defendants in their official capacities fails in its entirety.

### B. Plaintiff Has Failed to State a Claim For Damages Against Defendants in Their Individual Capacities

#### 1. Plaintiff Has Failed to State a Claim for Damages Against President Wong

Plaintiff also has not "plead[ed] specific facts regarding [President Wong's] conduct sufficient to plausibly state a cause of action against [President Wong] individually." *See Clark v. Cal. Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 814 (N.D. Cal. 2016). "To state a valid § 1983 claim, 'a plaintiff must plead that each government-official defendant, through the official's own individual actions, ha[s] violated the Constitution.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (citation omitted). "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) [she] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct . . . ." *Ariz. Students'*, 824 F.3d at 867 (citation omitted). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted).

There is no doubt that Plaintiff engages in constitutionally protected First Amendment activity as a Palestinian rights activist. Yet the various "smear campaigns" and public controversy of which Abdulhadi complains have no relevance to this case absent a connection to the Defendants' actions and motivations. (SAC ¶¶ 28–29.) Such connection is clearly lacking. Plaintiff's only allegations of actions by President Wong related to Plaintiff are:

- "When President Wong first arrived on campus in 2012 he initially stated his support for the AMED program." (*Id.* ¶ 38.)
- That President Wong "accepted an invitation to travel to Israel" with "the JCRC, which has a pro-Israel and anti-Palestinian bias." (*Id.* ¶ 39.) In fact, Plaintiff alleges, "the standard JCRC tour[]" has the "aims and results" of "whitewash[ing], concealing and distract[ing] from Israel's human rights violations thereby delegitimizing BDS advocates like Dr. Abdulhadi," and providing "President Wong

- "with the ideological justification(s) for doing the bidding of the herein mentioned anti-BDS donors (which included retaliating against Dr. Abdulhadi for her political speech advocating for justice for and in Palestine)." (*Id.* ¶ 40.)

- "Upon President Wong's return from Israel [in 2012] he began to express notable hostility toward Professor Abdulhadi . . . ." (*Id.* ¶ 41.)

- "President Wong … order[ed] repeated investigations into Plaintiff's international research and lecturing trips . . . ." (*Id.* ¶ 43.)

- "President Wong, under pressure from outside organizations, issued a statement claiming that chalked slogans and posters and the image on a sweatshirt celebrated violence and promoted anti-Semitism . . . ." (*Id.* ¶ 67.)

- "In May of 2014 President Wong ordered three separate (and redundant) audits into Dr. Abdulhadi's travels . . . ." (*Id.* ¶ 68.)

- "The pattern of acts was undertaken at the direction of President Wong, who held final decision-making authority at SFSU . . . ." (*Id.* ¶ 69.)

- "These adverse actions were directed, supervised and/or executed by Defendant[] Wong . . . ." (*Id.* ¶ 85.)

Abdulhadi's claims amount to a speculative allegation that "SFSU . . . [is] dependent upon outside donors such as the Koret Foundation for financial support," and that these donors are "individuals and entities" who are "anti-Palestinians with political agendas that [are] diametrically opposed and hostile towards Plaintiff's advocacy for justice for and in Palestine," and who "leverage their influence over SFSU to get SFSU's administrators to stifle Plaintiff's political speech." (SAC ¶ 29.) President Wong is alleged, without more, to have adopted the "anti-BDS" and "pro-Israel" position of "[s]uch donors" and retaliated against Dr. Abdulhadi for her support of Palestine and the BDS movement. (*Id.* ¶¶ 29–35.) Such speculative conspiracy theories should not be countenanced by the Court.

Dr. Abdulhadi does not stop there with spinning conspiracy theories. She also argues that the American Jewish Committee, connected to her case only as "an associate of JCRC" and "[a]nother Koret Foundation funded organization," is relevant because "AJC Project

1  Interchange"—a seminar in which Abdulhadi does not even allege President Wong took part—
2  "serve[s] as an antidote to BDS attempts" and convinces university presidents to speak out against
3  academic boycotts of Israel. (*Id*. ¶¶ 39–40.)  In essence, Abdulhadi alleges a coordinated attack
4  against her, of which President Wong is allegedly part, based on the fact that two organizations are
5  "associated" with one another and that President Wong went on a trip to Israel sponsored by one
6  of them.  Plaintiff goes on to invoke the "influence" of other Jews and Jewish organizations as
7  well, without connecting them in any specific way to Defendants' actions. (*Id*. ¶ 47.)  These
8  allegations are both offensive and insufficient to state a claim.  Plaintiff presents nothing more
9  than bald assertions about how the "pressure" on President Wong affected his motivation to
10 retaliate against her. (*Id*.)  Plaintiff has alleged no set of facts to "nudge[] her claims" of
11 retaliation "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting
12 *Twombly*, 550 U.S. at 570).

13        The only allegations that are not general and wholly conclusory (rather than "individual"
14 and "specific," as required by the case law) are that President Wong ordered investigations and
15 audits into Plaintiff's travel expenses.  This is not enough to support a Section 1983 damages
16 claim against him.

17        Plaintiff's inability to establish the required nexus of facts showing that President Wong
18 acted with a specific intent to retaliate against Plaintiff for her constitutionally protected free-
19 speech activities is fatal to her claim.  Plaintiff's Section 1983 claim against President Wong
20 should therefore be dismissed with prejudice.

21               **2.**     **Plaintiff Fails to State a Claim for Damages Against Defendants Rosser and Summit**
22
23        Defendants Rosser and Summit "is [each] only liable for [her] own misconduct."  *OSU*
24 *Student All.*, 699 F.3d at 1069 (quoting *Iqbal*, 556 U.S. at 677).  Plaintiff has failed to adequately
   plead a claim for damages against either of them.
25
26        The minimal allegations in Plaintiff's complaint against Defendant Rosser do not support a
27 section 1983 claim.  That Defendant Rosser's office denied Plaintiff funding for her book, without
   more, does not establish any retaliatory motive based on previous protected behavior. (SAC ¶ 48.)
28

1    Neither does any direction by Provost Rosser to Dean Monteiro to "investigate the contractual
2    agreement that the University would fund Plaintiff's travel." (*Id.* ¶ 50.)  Plaintiff provides no facts
3    at all regarding the required nexus between her protected speech and Defendant Rosser's
4    motivations.  And she does not allege that there was no legitimate basis for Rosser's actions.

5    Likewise, with respect to nearly all of her allegations concerning Provost Summit,
6    Abdulhadi does not link Summit's actions to Plaintiff's speech.  For instance, Abdulhadi makes
7    no connection at all between Provost Summit's alleged statement "that [Robert] Corrigan, while
8    he was President, had repudiated the existence of the contractually obligated faculty lines" or
9    Summit's instruction to "Dean Monteiro to act and speak as though the lines had never existed,"
10   and her own "outspoken advoca[cy] for justice for and in Palestine." (*Id.* ¶¶ 27–28.)  Plaintiff's
11   allegations that Defendant Summit delayed her travel authorization or refused her increased
12   funding also do not establish a sufficient nexus between the Defendant's actions and an intent to
13   chill speech.  (*Id.* ¶¶ 52–53); *Ariz. Students'*, 824 F.3d at 867.  The intent or motives of a "right-
14   winged 'think tank' [that] launched a petition" against Plaintiff may not be attributed to Defendant
15   Summit without specific allegations establishing that Defendant Summit adopted such an intent or
16   motive.  (SAC ¶ 52.)  Again, Abdulhadi does not allege that there was no legitimate basis for
17   Summit's actions.

18   The lack of alleged evidence tending to establish "the protected activity was a substantial
19   motivating factor in [any of the Defendants'] conduct," *Ariz. Students'*, 824 F.3d at 867,
20   distinguishes this case from those in which courts have recognized a successful claim of First
21   Amendment retaliation.  This case stands in contrast to those such as *Pickering v. Board of*
22   *Education of Township High School Disttrict 205*, 391 U.S. 563 (1968), and *CarePartners, LLC v.*
23   *Lashway*, 545 F.3d 867 (9th Cir. 2008), in which the speech at issue was critical of the very
24   individuals who allegedly retaliated and there was clear evidence that the retaliation was
25   undertaken in response to such criticism.  *See also Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th
26   Cir. 2012) ("[t]he proof is clearly found in [the retaliator's] efforts to have [plaintiff] arrested the
27   same day the *New Times* published an article critical of his investigation.").  In *CarePartners*, the
28   owner of the plaintiff company engaged in critical public speech, lobbying efforts, and an

1  administrative appeal related to the actions of a public department responsible for issuing licenses
2  to his company.  545 F.3d at 878.  In retaliation for such criticism, the employees of that
3  department allegedly made "aggressive enforcement decisions" against the plaintiff company and
4  there was alleged evidence of the state employees "losing patience" with Plaintiff.  *Id.* at 878–79.
5  In *Pickering*, a teacher was dismissed from his position by the local school board in retaliation for
6  sending a letter to a local newspaper criticizing that board.  391 U.S. at 564.  Such a direct tit-for-
7  tat is not present in Plaintiff's case here, and she presents no plausible set of facts, whether direct
8  or circumstantial, to connect the dots between her criticism of Israel or outspoken opinions on the
9  Israel-Palestine conflict and Defendants' actions and motivations.

10  Abdulhadi misleadingly alleges that, "[o]n March 23, 2018, Summit sent [her] an email . . .
11  demanding that she remove a post on a privately owned Facebook page wherein [she] criticized
12  President Wong's position on anti-Palestinian views on campus" and "threaten[ing] disciplinary
13  action against [her if she] did not obey and remove the aforementioned Facebook post."  (SAC ¶
14  54.)  What she omits to state is that her post was re-posted to San Francisco State University's
15  Arab and Islamic Ethnicities and Diaspora Studies ("AMED") department Facebook page and to
16  the Facebook page of the University-affiliated General Union of Palestinian Students ("GUPS")
17  student group.  (*See* RJN Ex's. A, B.)

18  Because the post appeared on sites that use the San Francisco State University name, one
19  of which purports to be an official page for a University department, it thereby implicated San
20  Francisco State University's own free speech interests.  *See Downs v. Los Angeles Unified Sch.*
21  *Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000) ("Although '[i]t is axiomatic that the government may
22  not *regulate* speech based on its substantive content or the message it conveys,' 'when the State is
23  the speaker, it may make content-based choices.'" (quoting *Rosenberger v. Rector and Visitors of*
24  *Univ. of Va.*, 515 U.S. 819, 828 (1995))).  "[T]he First Amendment allows [CSU] to decide that
25  [Abdulhadi] may not speak as its representative.  This power is certainly so if [her] message is one
26  with which [CSU] disagrees."  *Downs*, 228 F.3d at 1013.

27  The exchange Abdulhadi alleges with regard to her Facebook post is thus easily
28  distinguished from the facts of *Pickering*.  While there a teacher exercised his right to "speak on

issues of public importance" by writing a letter to a local newspaper that was critical of the school board for which he worked, in this case Abdulhadi's post with which Summit's office took issue was not written solely "as [a] member of the general public," 391 U.S. at 574, but rather carried the implication that it reflected the views of the university by purporting to speak on behalf of an official University department.  Abdulhadi's allegation is objectively misleading and fails to support a claim of retaliation for constitutionally protected speech under section 1983.

## V.    CONCLUSION

This is Plaintiff's third attempt to plead that she was retaliated against in violation of 42 U.S.C. § 1983.  Plaintiff's claims against the Defendants for injunctive relief in their official capacities and damages in their individual capacities should therefore be dismissed with prejudice.

DATED:  May 13, 2019                    MUNGER, TOLLES & OLSON LLP
                                        BRADLEY S. PHILLIPS
                                        ALISON F. KAROL


                                        By:    */s/ Bradley S. Phillips*
                                               BRADLEY S. PHILLIPS
                                        Attorneys for Defendants LESLIE WONG, SUE V. ROSSER, and JENNIFER SUMMIT