BRADLEY S. PHILLIPS (State Bar No. 85263)
Brad.phillips@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

ALISON F. KAROL (State Bar No. 408043)
Alison.karol@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-0913
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants LESLIE WONG, SUE V. ROSSER, and JENNIFER SUMMIT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| RABAB ABDULHADI,<br><br>        Plaintiff,<br><br>  vs.<br><br>LESLIE WONG; SUE V. ROSSER; JENNIFER SUMMIT; and DOES 1-100; inclusive<br>        Defendants. | Case No. 4:18-cv-04662-YGR<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (RULE 12(b)(6))**<br><br>Judge:  Judge Yvonne Gonzalez Rogers<br>Date:   July 9, 2019<br>Time:  2:00 p.m |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION..................................................................................................................1

II.    ARGUMENT .........................................................................................................................1

    A.    Plaintiff Has Failed to Adequately Allege that any Defendant Intentionally Retaliated Against Her ..........................................................................................1

        1.    Plaintiff Has Not Identified a Nexus Between The Defendants' Actions and an Intent to Chill Speech................................................................1

        2.    Temporal Proximity Alone is Insufficient to Adequately Support Plaintiff's Claim ...........................................................................................4

        3.    Asking Plaintiff to Remove Her Facebook Post From a University-Affiliated Website is Not Retaliation for Protected Speech...........................6

    B.    Plaintiff Has Failed to Identify an Unconstitutional Practice, Policy, or Procedure and Has Failed to Adequately Allege That Any Defendant's Actions Amount to Official Policy........................................................................8

III.    CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page**
**FEDERAL CASES**

*Archuleta v. Corr. Corp. of Am.*,
  735 F. App'x 238 (9th Cir. 2018) ................................................................................ 4

*Ariz. Students' Assoc. v. Ariz. Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016) .......................................................................... 1, 3, 4, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 1, 3, 5

*Bell v. Clackamas Cty.*,
  341 F.3d 858 (9th Cir. 2003) ........................................................................................ 4

*CarePartners, LLC v. Lashway*,
  545 F.3d 867 (9th Cir. 2008) ........................................................................................ 5

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ...................................................................................................... 8

*Coszalter v. City of Salem*,
  320 F.3d 968 (9th Cir. 2003) ........................................................................................ 4

*Denney v. DEA*,
  508 F. Supp. 2d 815 (E.D. 2007) ................................................................................. 1

*Downs v. Los Angeles Unified School Dist.*,
  228 F.3d 1003 (9th Cir. 2000) ...................................................................................... 7

*Gernetzke v. Kenosha Sch. Dist. No. 1*,
  274 F.3d 464 (7th Cir. 2001) .................................................................................... 8, 9

*In re Gilead Sci. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................... 5

*La v. San Mateo Cty. Transit Dist.*,
  2014 WL 6682476 (N.D. Cal. Nov. 25, 2014) ............................................................ 2

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ........................................................................................ 4

*Menotti v. City of Seattle*,
  409 F.3d 1113 (9th Cir. 2005) ...................................................................................... 8

*Monell v. Dept. of Social Serv.*,
  436 U.S. 658 (1978) ...................................................................................................... 9

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*OSU Student All. v. Ray*,
  699 F.3d 1053 (9th Cir. 2012)..................................................................................................3

*Pickering v. Board of Education of Township High School District 205*,
  391 U.S. 563 (1968) ..................................................................................................................5

*Price v. Akaka*,
  928 F.2d 824 (9th Cir. 1990) ....................................................................................................8

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
  393 U.S. 503 (1969) ..................................................................................................................6

*Ulrich v. City and Cty. of San Francisco*,
  308 F.3d 968 (9th Cir. 2002)................................................................................................8, 9

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002)..................................................................................................4

**STATE CASES**

*Harman v. City & Cty. of San Francisco*,
  136 Cal. App. 4th 1279 (2006)..................................................................................................9

**CASES - OTHER**

*Mandel, et al. v. Board of Trustees of the California State University*,
  Case No. 3:17-cv-03511............................................................................................................7

**FEDERAL STATUTES**

42 U.S.C. § 1983 ................................................................................................................. passim

**RULES - OTHER**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend I ..............................................................................................................1, 6, 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In opposition to Defendants' motion to dismiss, Plaintiff continues to rely on improperly drawn inferences of anti-Palestinian prejudice on the part of Defendants based on the fact that President Wong participated in a sponsored trip to Israel and that some donors to San Francisco State University ("SFSU") are Jewish and/or supporters of Israel. Abdulhadi has clearly failed to cure the deficiencies identified by the Court and Defendants in her First Amended Complaint and has not alleged facts sufficient to support her claim. Plaintiff has failed to adequately allege (1) that any of the Defendants retaliated against her based on her protected conduct in their individual capacities; or (2) a practice, policy, or procedure violating her rights, *see Ariz. Students' Assoc. v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).

## II. ARGUMENT

### A. Plaintiff Has Failed to Adequately Allege that any Defendant Intentionally Retaliated Against Her

#### 1. Plaintiff Has Not Identified a Nexus Between The Defendants' Actions and an Intent to Chill Speech

In order to adequately allege that Defendants, in their individual capacities, retaliated against her based on her protected conduct, Abdulhadi must allege facts sufficient to show that "the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *See Ariz. Students'*, 824 F.3d at 867. While surely otherwise permissible actions may not be taken for unlawful reasons, (Opp. at 8), Plaintiff has failed to articulate a plausible nexus showing that such a circumstance is present here.

Plaintiff cites a pre-*Iqbal* case to attempt to wriggle out from the plausibility standard governing this motion, arguing that her allegations must only "permit" the inference that the alleged retaliatory conduct was taken as a result of her First Amendment protected speech. (Opp. at 6) (citing *Denney v. DEA*, 508 F. Supp. 2d 815, 829 (E.D. 2007)). In order for such an inference to be permissible, however, it must also be plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While questions involving state of mind may often be factual, "vague,

conclusory, and boilerplate [language] fall short of raising a plausible inference" of intent, and Abdulhadi must plead specific allegations that, if proven, would establish discriminatory or retaliatory intent. *La v. San Mateo Cty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 6682476, at *11 (N.D. Cal. Nov. 25, 2014).

      Instead of curing her complaint's deficiencies, Abdulhadi largely rehashes, in voluminous form, facts that she has included in each previous iteration of her complaint, and which this Court has dismissed as insufficient to state a claim. To the extent that her allegations are new to the Second Amended Complaint, Plaintiff merely expands her inflammatory and spurious accusations of prejudice and retaliation against SFSU's administrators based on "VIP handling at the Ben Gurion airport," (SAC ¶ 40), "meetings with individuals . . . who advocate for the ethnic cleansing of Palestinians," (*id*.), pressure to "do[] the bidding of . . .anti-BDS donors," (*id*.), the fact that the JCRC is "pro-Israel," (SAC ¶ 38), a desire "to please JCRC and its allies," (Opp. at 30), the fact that the Koret Foundation donates to SFSU and also donates to other organizations "whose campaigns have resulted in death and rape threats against pro-Palestinian students at SFSU," (Opp. at 16, n.4), the consistency of certain actions with "the Israeli government's program of 'character assassination,'" (Opp. at 11; SAC ¶ 29), the 2008 recession (SAC ¶ 29), the fact that "Susan Wolfe, Director of Grant Making Programs at the Koret Foundation," a donor organization to SFSU, applauded a condemnation of BDS, (Opp. at 17; SAC ¶ 64), and that two individuals who are not defendants in this lawsuit (Jason Porth and Abby Porth) "worked to stop the San Francisco Board of Supervisors from condemning Israel's blockade of Gaza" (SAC ¶ 47(b)). Plaintiff repeatedly invokes the "influence" of various Jews and Jewish organizations, and Plaintiff's political differences with them, without connecting them in any specific way to *Defendants*' actions. (SAC ¶ 47). Plaintiff's allegations are both offensive and insufficient to state a claim, as are Plaintiff's attempts to brush off all legitimate criticism of her incendiary statements as "false allegations of anti-Semitism." (Opp. at 28, n.19).

The only connection Plaintiff draws between President Wong and each of these statements is that he went on a JCRC-sponsored trip to Israel and was "hostile" towards Plaintiff upon his return.  Plaintiff fails even more miserably to allege a substantial nexus between her protected speech and an intent by Defendants Rosser and Summit to retaliate against her.  Plaintiff does not dispute that her allegations against Defendant Rosser amount to denying Plaintiff funding for her book and interfering with her travel by initiating new requirements and instructing Dean Monteiro to review the University's obligations to her.  (SAC ¶¶ 48, 50, 71).  Conclusorily labeling Rosser's actions as "spiteful" does not establish any connection between Rosser's actions and Plaintiff's speech.  (Opp. at 23.)  Plaintiff provides no facts at all regarding the required nexus between her protected speech and Defendant Rosser's motivations, and thus she fails to state a claim against her.

Likewise, with respect to nearly all of her allegations concerning Provost Summit, Abdulhadi does not link Summit's actions to Plaintiff's speech.  Plaintiff's allegations that Defendant Summit delayed her travel authorization or refused her increased funding do not establish a sufficient nexus between the Defendant's actions and an intent to chill speech.  (*Id.* ¶¶ 52–53); *Ariz. Students'*, 824 F.3d at 867.  Moreover, Plaintiff has failed to plausibly allege that Summit's actions in sending a letter to Plaintiff concerning a Facebook post on the official AMED Studies page out of legitimate concern for the University's speech interests were instead merely retaliatory and undertaken to "chill [Plaintiff's] speech." *See Ariz. Students'*, 824 F.3d at 867; (Defendants' RJN, Ex. C).  Defendants Rosser and Summit "is [each] only liable for [her] own misconduct."  *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677).  Plaintiff has failed to adequately plead a claim for damages against either of them.

Plaintiff clearly has failed to cure the deficiencies in her First Amended Complaint as required to survive a motion to dismiss her Second Amended Complaint. "There is no indication in the SAC of any connection between" the statements of *other individuals* and outside groups

(SAC ¶¶ 29-35, 67), and "any . . . allegedly adverse employment action taken against her."[1] *Archuleta v. Corr. Corp. of Am.*, 735 F. App'x 238, 241 (9th Cir. 2018); *see also Arizona Students'*, 824 F.3d at 867.  Plaintiff's section 1983 claim against each Defendant in their individual capacities should be dismissed with prejudice.

### 2. Temporal Proximity Alone is Insufficient to Adequately Support Plaintiff's Claim

Plaintiff also argues that the four months between outside pressure groups' complaining about her and the audits ordered by Defendant Wong into Plaintiff's travels is enough, on its own, to support an inference of retaliation.  Not so.  The Ninth Circuit has undeniably held that a "chronology alone is not sufficient to support an inference of retaliatory intent" in the absence of any other "evidence to support retaliatory intent."  *Archuleta v. Corr. Corp. of Am.*, 735 F. App'x 238, 241 (9th Cir. 2018); *see also Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) ("Beyond the bare facts of the timing, plaintiffs in this case provided additional evidence . . . ."); *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003) ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence . . . *in some cases*." (emphasis added)).  This is not one of the "some cases" in which "causation can be inferred from timing alone" because the "adverse employment action follows on the heels of protected activity."  *Id*. at 865-66 (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)).  Here, Plaintiff alleges that she has engaged in essentially the same protected speech over a long period of time, including before she was hired by SFSU.  (Opp. at 13) (citing SAC ¶¶ 19-20, 28, 59-60).  Her allegations are not that her speech caused Defendants to retaliate against her shortly after the protected activity, but rather that outside complaints and a trip by one of the Defendants to Israel somehow caused a change in Defendants' feelings towards her.  Timing can support an inference of retaliation, but here, timing alone, absent any other facts showing that the Defendants' actions and Plaintiff's speech are

---

[1] Plaintiff argues in her brief that *Defendants* "complained about . . . or attacked her for" her protected speech but points to no support for this statement in her Second Amended Complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") (internal quotation marks and modifications omitted).

otherwise related, does not support a plausible inference that they are connected.  This is especially so where the speech Plaintiff alleges is the catalyst for the retaliation against her does not concern the school or its administrators.  *Cf.  Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, 568-69 (1968); *CarePartners, LLC v. Lashway*, 545 F.3d 867, 876-78 (9th Cir. 2008) (concerning protected speech made against the defendant organizations).

In Plaintiff's discussion of timing, she also notes that she "has long been a prominent and outspoken advocate for justice for and in Palestine and this was well known to SFSU when they recruited her."  (Opp. at 13) (citing SAC ¶¶ 19-20, 28, 59-60).  In fact, she alleges that "[w]hen President Wong first arrived on campus in 2012 he initially stated his support for the AMED program."  (SAC ¶ 38).  The fact that Defendants previously supported Plaintiffs and her program only buttresses the reality that Plaintiff's claim turns heavily on her offensive allegations that President Wong's trip to Israel and the "behind the scenes" influence of Jewish donors alone caused Defendants to turn on her after explicitly supporting Plaintiff, her program, and her outspoken advocacy in the past.  Plaintiff simply states that "Defendant Wong went from supporting Plaintiff to expressing hostility towards her after his JCRC sponsored trip to Israel."  (Opp. at 14) (citing SAC ¶ 41).  Plaintiff presents no specifics about this "hostility" whatsoever, and, despite Plaintiff's claims to the contrary, inferring anti-Palestinian bias from a visit to Israel is not, as a matter of law, reasonable.  The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Plaintiff has alleged no set of facts to "nudge[] her claims" of retaliation "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).  The only allegations that are not general and wholly conclusory (rather than "individual" and "specific," as required by the case law) are that President Wong ordered investigations and audits

into Plaintiff's travel expenses.[2]  This is not enough to support a Section 1983 damages claim against him.

### 3. Asking Plaintiff to Remove Her Facebook Post From a University-Affiliated Website is Not Retaliation for Protected Speech

In her Opposition, Plaintiff doubles down on her misleading statement that a Facebook post contradicting the University's statements and values was merely "a post on Plaintiff's personal Facebook page" that Defendants tried "to censor."  (Opp. at 27.)  Plaintiff's argument is unpersuasive.  The Facebook post at issue both implicated SFSU's own speech interests *and* was outside of SFSU's direct power to physically remove, requiring administrators to submit a request to Dr. Abdulhadi to remove it.  Defendant Summit asked Plaintiff to remove her post from her University-affiliated, official AMED program Facebook page precisely because the speech purported to be on behalf of a University department and university administrators lacked the ability to remove it.

Plaintiff points to the handbook for student organizations which directs *clubs* and *student organizations* to describe themselves in a particular way to distinguish themselves from the University's "Department[s] [and] Program[s]."  (Plaintiff's RJN, Ex. G at 4).  AMED Studies is a University Department and Program, not a student organization or club.  The General Union of Palestinian Students, while a student organization, reposted Abdulhadi's post directly *from the AMED Studies* page, and Defendants raise the reposting merely to show that speech that purported to be from an official University department was being republished and widely circulated, heightening the need for  SFSU to  communicate with Abdulhadi regarding her purported speech as its representative.  Moreover, the fact that the handbook includes such rules for student groups

---

[2] Plaintiff also takes issue with a lack of action by Defendants, alleging that Defendants generally did nothing to remove a Nazi student from campus or her classroom.  SAC ¶ 56.  Plaintiff does not, and could not allege, however, that Defendants *could* take such an action.  It is black letter law that "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969).  Plaintiff does not allege that this Nazi student made any particular comments or caused any material disruption to her class.  SAC ¶ 56. Therefore, while such beliefs are obviously offensive, they clearly are also protected by the First Amendment.  Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506.

-6-  Case No. 4:18-cv-04662-YGR
DEFENDANTS' REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT

shows that, even for clubs and student organizations, the University has an interest in the way its name is used online and in speech that may imply affiliation with the University.

The official AMED Studies Facebook page *at SFSU* is clearly analogous to the school bulletin boards at issue in *Downs*. *See Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000). Facebook is nothing if not an online "bulletin board," and whether or not SFSU officials "owned" the page, it clearly used both the SFSU name and the name of an official University department.

Plaintiff's invocation of the doctrine of judicial estoppel is patently misguided. (Opp. at 26.) Defendants' argument here presents no contradiction to CSU's representations in *Mandel, et al. v. Board of Trustees of the California State University*, Case No. 3:17-cv-03511. SFSU may impose restrictions on official student organization and department Facebook pages precisely because they purport to officially affiliate with SFSU. In *Mandel*, CSU acknowledged that it could not directly control the content on these pages, not that it lacked a speech interest in them. (*See* Plaintiff's RJN, Ex. G at 86.) Because the administration could not directly control the content, it was outside of the administration's power to physically remove any particular post. Consistently, in this case, if SFSU had the power to remove Plaintiff's Facebook post from the official AMED Studies at SFSU page, it likely would have done so. Instead, the administration, invoking its interest in the speech on its affiliated site, asked Plaintiff, who exercised control over the page, to remove the post. Provost Summit's letter to Plaintiff clearly indicates that the University was concerned only about the post on the University-affiliated Facebook page, and not Professor Abdulhadi's personal page. (*See* Defendants' RJN, Ex. C.) "[T]he First Amendment allows [CSU] to decide that [Abdulhadi] may not speak as its representative. This power is certainly so if [her] message is one with which [CSU] disagrees." *Downs*, 228 F.3d at 1013. Abdulhadi's allegation, and her argument in opposition to Defendants' motion, is objectively misleading and fails to support a claim of retaliation for constitutionally protected speech under section 1983.

### B. Plaintiff Has Failed to Identify an Unconstitutional Practice, Policy, or Procedure and Has Failed to Adequately Allege That Any Defendant's Actions Amount to Official Policy

Plaintiff's alarmist argument that Defendants must be final decision-makers at SFSU because otherwise all "civil rights violations at California State University" would go without redress is wrong. As Plaintiff well knows, a CSU official may be sued in his or her individual capacity "for alleged wrongs committed by the officer in his [or her] official capacity." *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990).

Moreover, Plaintiff has failed to adequately allege that the actions of Defendants here constituted the official policy of CSU. Only the "'conferral' . . . of final authority makes the 'delegate' the final authority." *Gernetzke v. Kenosha Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988)). President Wong is clearly a "delegate of the" Board of Trustees, but Plaintiff does not adequately allege the conferral of final authority such that President Wong's actions may be said to represent CSU's official policy. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468; *see also Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002) (citation omitted). As in *Gernetzke*, here, "[t]he bearing of delegation . . . turns out to be critical in this case. The final decisionmaking authority of the school . . . is lodged in" the Board of Trustees, which "promulgate[s] [Standing Orders] that delegate the administration of" each CSU campus to the Chancellor and the Presidents of each school. *Id*. at 468-69. "*Every* public employee . . . exercises authority ultimately delegated to him or her by their public employer's supreme governing organs." *Id*. That fact does not make every public employee a final decision maker for purposes of official capacity liability. *Id*.

Unlike in *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005), on which Plaintiff relies, it is clear that President Wong's responsibilities include consulting with a higher authority in adopting official policy decisions. The Board of Trustees' Standing Orders explicitly provide that the Chancellor is responsible for the "[a]ppointment of personnel, development and enforcement of personnel programs and discipline and termination of personnel," as well as "[a]ppointments to various boards and committees." (*See* Defendants' RJN, Ex. D at 3.) The

President of SFSU has authority and responsibility over such matters at his campus only "with appropriate consultation" and "consistent with Trustee and Chancellor's policy." *Id*. Plaintiff does not allege that President Wong consulted with any higher authority before allegedly deciding to violate Plaintiff's rights by instituting bureaucratic harassment in retaliation against her.[3] Such a policy, even if President Wong had adopted it, would certainly not be consistent with Trustee and Chancellor's policy. Even if Plaintiff had alleged any particular policy, however, she has also failed to allege facts sufficient to show that her own "protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *See Ariz. Students'*, 824 F.3d at 867; *see also, supra at 1-4*.

In addition, it remains plain that Plaintiff alleges no facts showing that Defendants Rosser or Summit, in their official capacities, adopted (or had the authority to adopt) an official policy or custom to retaliate against her. Plaintiff's statements about "shared governance" (SAC ¶¶ 11, 14), do not amount to an allegation sufficient to state a claim that either Defendant Rosser or Summit was "a final policymaking authority," *Ulrich*, 308 F.3d at 984–85. Plaintiff does not coherently explain how any statements she makes about "shared governance" are legally significant in the absence of adequate allegations that Rosser and Summit's shared-governance roles eliminated the existence of any "higher authority." *Harman v. City & Cty. of San Francisco*, 136 Cal. App. 4th 1279, 1298 (2006) (emphasis added) (quoting *Gernetzke*, 274 F.3d at 468–69). The sharing of authority is inherent in delegation, but in this instance it is straightforward that the final authority rests with CSU's Chancellor and the Board of Trustees. Plaintiff may sue CSU directly under § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision *officially adopted and promulgated*," *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 690 (1978) (emphasis added), by its "supreme governing organs," *Gernetzke*, 274 F.3d at 469. Plaintiff points to no such policy.

---

[3] Plaintiff also includes allegations against past-SFSU President Robert Corrigan, who is not a named Defendant in this suit. (SAC ¶¶ 14, 22, 24, 27, 34, 36, 37, 64-66, 78). Because Plaintiff fails to state a claim against CSU and Corrigan is not a named defendant, Corrigan's actions are irrelevant.

**III.    CONCLUSION**

This is Plaintiff's third attempt to plead that she was retaliated against in violation of 42 U.S.C. § 1983.  As Plaintiff has failed to support her claims with specific, plausible allegations, Plaintiff's claims against the Defendants for injunctive relief in their official capacities and damages in their individual capacities should be dismissed with prejudice.

DATED: June 4, 2019                         MUNGER, TOLLES & OLSON LLP
                                                                    BRADLEY S. PHILLIPS
                                                                    ALISON F. KAROL

By:    */s/ Bradley S. Phillips*
              BRADLEY S. PHILLIPS
Attorneys for Defendants LESLIE WONG, SUE V. ROSSER, and JENNIFER SUMMIT