

THE LAW OFFICES OF HAYTHAM FARAJ, PLLC

November 22, 2021

**Haytham Faraj**
Admitted in IL, MI, CA, DC, IA

**Matthew Amarin**
Admitted in IL

**Katherine Melik-Stepanyan**
Admitted in CA

**Christina Smedley**
Admitted in IL

**Stephanie Herrick**
Admitted in CA

Hon. Yvonne Gonzalez Rogers
United States District Judge
Northern District of California
Ronald V. Dellums Federal Building & United States Courthouse
1301 Clay Street
Oakland, CA 94612

**Re:** ***Abdulhadi v. Wong, et al.*, Case No. 4:18-cv-04662-YGR**
Plaintiff's Response to Defendant's Pre-Filing Conference for Defendants' Motion for Summary Judgment

Dear Judge Gonzalez Rogers:

Pursuant to Rule 9 (a) of Your Honor's Standing Order in Civil Cases, this letter serves as Plaintiff Dr. Rabab Abdulhadi's (hereinafter "Plaintiff" and/or "Dr. Abdulhadi") response to Defendants Leslie Wong and Jennifer Summit's (collectively hereinafter "Defendants") request for a pre-filing conference regarding Defendants' motion for summary judgment.

## I. PLAINTIFF'S RESPONSE TO SUBSTANCE OF DEFENDANTS' LETTER

### A. *Statute of Limitations*

Plaintiff's claim is not barred by the statute of limitations because by Defendants' own admission in their letter, there are seven administrative grievances that allege conduct during the limitations period. According to Defendants, the seven allegations are:

(1) Provost Summit required Plaintiff to add six words to a travel authorization request in fall 2017;
(2) "[s]ince at least October 14, 2016," SFSU has allegedly "tolerated the acts of third parties" criticizing Plaintiff;
(3) in February 2019, after Plaintiff allegedly "led a protest" related to SFSU's recognition of religious holidays, Plaintiff alleges her student assistant was fired and a travel authorization was denied;
(4) SFSU allegedly did not "in any way address" the presence of a "Nazi" in Plaintiff's class in fall of 2018;



CHICAGO · LOS ANGELES

WWW.FARAJLAW.COM

(5) SFSU allegedly delayed or denied various travel approvals and expenses in fall 2017;

(6) Plaintiff was allegedly not invited to serve on a task force and working group in spring/summer 2017; and

(7) in 2018, the Department Chair allegedly "sought to sidestep Dr. Abdulhadi" by "deal[ing] directly with her teaching associate and doctoral student." ECF No. 42 at ¶¶ 51–52, 55–56, 70(d)–(f), 75–77.

(Defendants' Pre-Filing Conference Letter, footnote number 2.)

Dr. Abdulhadi was denied and delayed repayment for legitimately authorized expenses such as Dr. Abdulhadi's travel to present a paper at the bi-annual conference of the Center for American Studies and Research at the American University of Beirut, Dr. Abdulhadi's travel to the annual meeting of the American Studies Association, where she was to present a 2017 lecture on the 100th Anniversary of the Balfour Declaration at the University of London's School of Oriental and African Studies (SOAS) and the French National Assembly, amongst other trips and routine reimbursement for supplies necessary for her research and teaching, including, *inter alia*, storage charges for substantial amounts of electronic data, the cost of shipping extensive research files held at SFSU to New York where she was continuing her research and writing for publication, etc.

Despite her senior status and her title as Director and senior scholar in AMED Studies, Dr. Abdulhadi, a Palestinian Arab and Muslim woman, was repeatedly excluded from University task forces and working groups that were set up to address anti-Semitism and Islamophobia.

These adverse actions against Dr. Abdulhadi were a direct response to and were intended to punish, embarrass, harass and discriminate against Dr. Abdulhadi for the exercise of her free speech rights on matters of public concern. The Board of Trustee's adverse retaliatory actions against Dr. Abdulhadi violated her constitutional rights under the First Amendment to the U.S. Constitution, as enforced through 42 U.S.C. Section 1983. These adverse actions were directed, supervised and/or executed by Defendants.

### B. ***<u>Fact Issues on Adverse Employment Action or Retaliatory Motive</u>***

Plaintiff is readily aware of the burden in designating specific facts demonstrating the existence of genuine issues for trial. There are numerous email communications that can and will be utilized as supporting evidence. Additionally, Plaintiff has additional options at her disposal, including declarations signed under oath which can be utilized as evidentiary support in her Opposition.

### C. ***<u>Qualified Immunity</u>***

State officials will be denied immunity where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." (*Anderson v. Creighton* (1987) 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523.)

Here, Dr. Abdulhadi is a professor of Arab and Muslim Studies, a Palestinian, a Muslim, a woman and someone, as a college professor, academician and researcher, who speaks out on matters of public importance including issues of importance to the Palestinian community, and issues which are not popular with some segments of U.S. society. SFSU was aware of Dr. Abdulhadi's expertise as a Palestine Studies scholar as well as her enthusiastic advocacy and reputation and likely recruited her to spearhead the AMED program at SFSU for this very reason.

Unfortunately, SFSU quickly abandoned the specific promises made to Dr. Abdulhadi and the AMED program due to concerted external pressures by groups such as the Jewish Community Relations Council ("JCRC"), Simon Wiesenthal Center, AMCHA initiative, Stand with Us, amongst others. By way of example, in the Fall of 2017, Provost Summit delayed Dr. Abdulhadi's travel authorization to Palestine insisting that forms be changed to read "in consultation with President's office" regarding the Memorandum of Understanding between SFSU and an-Najah National University in Palestine. This new requirement was imposed after a "think tank" launched a petition smearing Plaintiff as a terrorist apologist and demanding cancellation of the Memorandum of Understanding. The university contributed to the smear campaign by allowing defamatory statements by third parties to be posted to university controlled internet media including the University website and to remain under the guise of free speech. In contrast, Plaintiff was reprimanded and admonished for posting statements critical of the University presidents privately funded to trip to Israel on the university Facebook page.

While the University is not responsible for all the attacks Plaintiff suffered, SFSU, a state institution funded by the public, reshaped its policies to appease special interests of a foreign government, specifically Israel, and a specific political ideology, Zionism, to the detriment of other views and ideas in what is supposed to be free marketplace of view and ideas.

Respectfully,

**THE LAW OFFICES OF HAYTHAM FARAJ**

Haytham Faraj, Esq.